**IN THE DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SHEA HOOVER, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-10794-WLH-PVC |
|      Plaintiff, | **CLASS ACTION SETTLEMENT AGREEMENT** |
| v. | |
| ASM GLOBAL PARENT, INC, | |
|      Defendant. | |

This Settlement Agreement, dated as of June 25, 2025, is made and entered into by and among the following Settling Parties (as defined below): Shea Hoover ("Plaintiff"), individually and on behalf of the Settlement Class (as defined below), by and through Proposed Settlement Class Counsel, and ASM Global Parent, Inc. ("ASM" and, together with Plaintiff, the "Parties" or the "Settling Parties"), by and through its counsel of record, Michelle Visser of Orrick, Herrington & Sutcliffe LLP. The Settlement Agreement (as defined below) is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof:

**THE LITIGATION**

Plaintiff alleges that on or about October 12, 2023, Defendant detected unauthorized activity affecting certain on-premises servers supporting an application known as Solomon (the "Data Security Incident"). Solomon is an enterprise resource planning ("ERP") tool, which ASM used to support its management of venue operations. Plaintiff further asserts that, as a result of the Data Security Incident, cybercriminals accessed and obtained sensitive and confidential personal information belonging to Plaintiff and Class Members, including names plus dates of birth, Social Security numbers, driver's license or state identification numbers, passport numbers, and/or credit or debit card numbers, along with associated CVV codes and expiration dates (collectively, "personally identifiable information" or "PII"), as well as medical diagnosis and treatment information ("protected health information" or "PHI")

(collectively, "PII" and "PHI" shall be referred to hereinafter as "Private Information" unless otherwise specified) in a limited number of instances. The types of compromised information varied among individuals and were exposed in different combinations.

Following the discovery of the Data Security Incident, ASM identified approximately 4,634 individuals, including 550 California Residents (as defined below), whose Private Information was impacted and thereafter commenced a process to notify individuals and offered them two years of complimentary credit monitoring. Notices were mailed on or around November 12, 2024.

On December 13, 2024, Plaintiff Shea Hoover filed a lawsuit asserting claims against ASM relating to the Data Security Incident in the United States District Court for the Central District of California. The case is titled *Shea Hoover v. ASM Global Parent, Inc.*, Case No. 2:24-cv-10794-WLH-PVC (C.D. Cal.) (the "Litigation").

From the onset of the Litigation and over the course of several months, the Parties engaged in extensive, arm-length settlement negotiations. The negotiations were informed by Plaintiff's active prosecution of the case, the comprehensive exchange of information between the Parties, and Proposed Settlement Class Counsel's (as defined below) thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the Settlement Class. Based on this investigation and the negotiations described above, Proposed Settlement Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty, and expense of continued litigation, and the benefits to be provided to the Settlement Class under the terms of this Settlement Agreement, that the proposed settlement is fair, reasonable, adequate, and in the best interests of the putative class. The Parties' resolution is memorialized in the Settlement Agreement presented herein ("Settlement Agreement").

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against ASM and the Released Persons (as defined below) relating to the Data Security Incident, by and on behalf of Representative Plaintiff and the Settlement Class (as defined below).

/ / /

/ / /

1    **CLAIMS OF REPRESENTATIVE PLAINTIFF AND BENEFITS OF SETTLING**

2        Plaintiff believes the claims asserted in the Litigation, as set forth in the Class Action Complaint,

3    have merit. Plaintiff and Proposed Settlement Class Counsel recognize and acknowledge, however, the

4    expense and length of continued proceedings necessary to prosecute the Litigation against ASM through

5    motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk

6    of further litigation, as well as the difficulties and delays inherent in such litigation, especially in

7    complex class actions. Proposed Settlement Class Counsel are highly experienced in class action

8    litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue

9    generally in such litigation and in this Litigation. They have determined that the settlement set forth in

10   this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement

11   Class.

12       **DENIAL OF WRONGDOING AND LIABILITY**

13       ASM denies each and all of the claims and contentions alleged against it in the Litigation. ASM

14   denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation.

15   Nonetheless, ASM has considered the inherent uncertainty and risks associated with any litigation and

16   determined it is desirable that the Litigation be fully and finally resolved in the manner and upon the

17   terms and conditions set forth in this Settlement Agreement.

18       **TERMS OF THE SETTLEMENT**

19       NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiff,

20   individually and on behalf of the Settlement Class and ASM, that, subject to the approval of the Court,

21   the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and

22   the Litigation shall be dismissed with prejudice as to the Settling Parties, and the Settlement Class,

23   except those members of the Settlement Class who lawfully opt-out of the Settlement Agreement, upon

24   and subject to the terms and conditions of this Settlement Agreement, as follows:

25   / / /

26   **1.    Definitions**

27       As used in the Settlement Agreement, the following terms have the meanings specified below:

28       1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2    "CAFA Notice" means the Class Action Fairness Act Notice which the Claims Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed settlement. The Claims Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

1.3    "California Resident(s)" means any and all individuals residing in California as of October 10, 2023, and who were mailed notification of the Data Security Incident at a California address indicating that their PII and/or PHI was impacted in the Data Security Incident first detected by ASM on October 12, 2023.

1.4    "Claimant" means a Settlement Class Member who submits a Claim Form for a Settlement Payment.

1.5    "Claims Administration" means the processing and payment of claims received from members of the Settlement Class by the Claims Administrator.

1.6    "Claims Administrator" means Simpluris a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation.

1.7    "Claims Deadline" means the postmark or online submission deadline for Valid Claims submitted pursuant to Section 2, which shall be ninety (90) days after the Notice Commencement Date.

1.8    "Claim Form" means the claim form to be used by members of the Settlement Class to submit a Settlement Claim, either through the mail or online through the Settlement Website, substantially in the form as shown in **Exhibit C** to this Agreement.

1.9    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.10    "Court" means the United States District Court for the Central District of California.

1.11    "Data Security Incident" means the cyberattack identified by ASM on or about October 12, 2023, in which third-party criminals gained unauthorized access to ASM's network and gained unauthorized access to the Private Information of Plaintiff and other consumers.

1.12    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.13    "Effective Date" means the first date by which all of the events and conditions specified

Settlement Agreement

1    in Section 9.1 *infra* have occurred and been met.

2        1.14    "Final" means the occurrence of all of the following events: (i) the settlement pursuant

3    to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that

4    term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has

5    expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed

6    in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or

7    affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any

8    order modifying or reversing any attorneys' fee award or service award made in this case shall not affect

9    whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

10       1.15    "Final Approval Order" means the order finally approving the Settlement and entering

11   judgment. The Settling Parties' proposed form of Final Approval Order is attached hereto as **Exhibit E**.

12   Final Approval Order also includes the orders, which may be entered separately, determining the amount

13   of attorneys' fees and costs awarded to Class Counsel and the amount of Service Awards awarded to

14   Class Representatives.

15       1.16    "Judgment" means a judgment rendered by the Court.

16       1.17    "Long Notice" means the long form notice of settlement posted on the Settlement

17   Website, substantially in the form as shown in **Exhibit B** to this Agreement.

18       1.18    "Notice Commencement Date" means thirty (30) days following entry of the Preliminary

19   Approval Order.

20       1.19    "Objection Date" means the date by which members of the Settlement Class must mail

21   to the Court or, in the alternative, file with the Court through the Court's electronic case filing ("ECF")

22   system their objection to the Settlement Agreement for that objection to be effective, which shall be

23   sixty (60) days from the Notice Commencement Date. The postmark date shall constitute evidence of

24   the date of mailing for these purposes.

25       1.20    "Opt-Out Date" means the date by which members of the Settlement Class must mail

26   their requests to be excluded from the Settlement Class for that request to be effective, which shall be

27   sixty (60) days from the Notice Commencement Date. The postmark date shall constitute evidence of

28   the date of mailing for these purposes.

1.21    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.22    "Plaintiff" and "Representative Plaintiff" means Shea Hoover.

1.23    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class. The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as **Exhibit D**.

1.24    "Proposed Settlement Class Counsel" means M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Corporation, J. Gerard Stranch, IV, and Grayson Wells of Stranch, Jennings & Garvey, PLLC.

1.25    "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action that either has been asserted, was asserted, or could have been asserted, by any member of the Settlement Class against any of the Released Persons, including Unknown Claims, based on, relating to, concerning or arising out of the Data Security Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation as they relate to the Data Security Incident including, but not limited to: Any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality. This includes claims under 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States as defined below; all similar state consumer-protection statutes; and any state or local privacy, data breach, or data protection statutes, including those providing for statutory damages under California law, such as violations of the California Consumer Protection Act of 2018 ("CCPA"), Cal. Civ. Code § 1798, *et seq.* Released Claims also include any common law claims, such as claims for negligence, negligence *per se*, breach of implied contract, and breach of bailment. Released Claims further include, but are not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future

1    damages, statutory damages, punitive damages, special damages, exemplary damages, restitution,

2    and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued

3    or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief.

4    Released Claims shall not include the right of any Settlement Class Member or any of the Released

5    Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not

6    include the claims of members of the Settlement Class Members who have timely excluded themselves

7    from the Settlement Class.

8         1.26    "Related Entities" means ASM's respective past or present parents, subsidiaries,

9    divisions, and related or affiliated entities.

10        1.27    "Released Persons" means ASM and its Related Entities and each of its and their

11   respective directors, officers, principals, agents, attorneys, insurers, and reinsurers, and includes, without

12   limitation, ASM Global Parent, Inc., and any Person related to any such entity who is, was, or could

13   have been named as a defendant in any of the actions in the Litigation, other than any Person who is

14   found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding,

15   or abetting the Data Security Incident or who pleads *nolo contendere* to any such charge.

16        1.28    "Releasing Parties" means Plaintiff and all Settlement Class Members who did not timely

17   and properly exclude themselves from the Settlement, and each of their respective heirs, executors,

18   administrators, representatives, agents, partners, successors, attorneys, and assigns.

19        1.29    "Settlement Claim" means a claim for settlement benefits made under the terms of this

20   Settlement Agreement.

21        1.30    "Settlement Class" and "Class" means all United States Residents whose Private

22   Information was compromised in the Data Security Incident detected by ASM on or about October 12,

23   2023. The Settlement Class specifically excludes: (i) ASM, the Related Entities, and their officers and

24   directors; (ii) all Settlement Class Members who timely and validly request exclusion from the

25   Settlement Class; (iii) any judges assigned to this case and their staff and immediate family; and (iv)

26   any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating,

27   causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads

28   *nolo contendere* to any such charge.

1.31    "Settlement Class Member(s)" means all persons meeting the definition of the Settlement Class. There are approximately 4,634 Class Members. These individuals constitute the "Settlement Class" solely for the purposes of certifying a settlement class in this Litigation.

1.32    "Settlement Fund" means the common settlement fund established by Class Counsel pursuant to 26 CFR § 1.468B-1 using Western Alliance Bank or another qualified bank agreed upon by the Parties and Claims Administrator, in which ASM will deposit $350,000.00 in settlement funds and from which all monetary compensation to the Settlement Class and certain other expenses shall be paid pursuant to Section 2 below.

1.33    "Settlement Remainder" means the funds that remain in the Settlement Fund after paying (1) all Valid Claims; (2) all Costs of Claims Administration; (3) any incentive payments approved by the Court to the Representative Plaintiff; and (4) attorney's fees and costs as approved by the Court.

1.34    "Settlement Website" means a website, the URL for which to be mutually selected by the Settling Parties, that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines, and related information, as well as provide the Settlement Class Members with the ability to submit a Settlement Claim online.

1.35    "Settling Parties" means, collectively, ASM and Plaintiff, individually and on behalf of the Settlement Class.

1.36    "Short Notice" means the short form notice of the proposed class action settlement, substantially in the form as shown in **Exhibit A** to this Agreement. The Short Notice will direct recipients to the Settlement Website and inform members of the Settlement Class of, among other things, the Opt-Out and Objection Deadlines, and the date of the Final Fairness Hearing (if set prior to the Commencement Date (as defined below)).

1.37    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

1.38    "Unknown Claims" means any of the Released Claims that any member of the Settlement Class, including any Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or

1  to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling

2  Parties stipulate and agree that upon the Effective Date, Plaintiff intends to and expressly shall have,

3  and each of the other members of the Settlement Class intend to and shall be deemed to have, and by

4  operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California

5  Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any

6  state, province, or territory of the United States (including, without limitation, California Civil Code §§

7  1798.80 *et seq.*; Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South

8  Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code

9  §1542, which provides:

10       A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR

11       OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR

12       HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF

13       KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR

14       HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

15       Members of the Settlement Class, including Plaintiff, and any of them, may hereafter discover

16  facts in addition to, or different from, those that they, and any of them, now know or believe to be true

17  with respect to the subject matter of the Released Claims, but Plaintiff expressly shall have, and each

18  other member of the Settlement Class shall be deemed to have, and by operation of the Judgment shall

19  have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims.

20  The Settling Parties acknowledge, and members of the Settlement Class shall be deemed by operation

21  of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement

22  Agreement of which this release is a part.

23       1.39    "Valid Claims" means Settlement Claims in an amount approved by the Claims

24  Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

25       **2.    Settlement Benefits**

26       2.1    In consideration for the releases provided in this Settlement Agreement, ASM shall fund

27  the creation of the Settlement Fund to provide compensation to Settlement Class Members as set forth

28  in this Section. Within fourteen (14) days after entry of the Preliminary Approval Order and after

1  receiving an invoice from the Claims Administrator, whichever is later, ASM shall fund the estimated

2  Claims Administrator Costs. Within fourteen (14) days after the Effective Date, ASM shall fund the

3  remainder of the $350,000.00 settlement funds.

4      2.2    <u>Out-of-Pocket Expense Reimbursement</u>: All members of the Settlement Class who have

5  suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for

6  up to $10,000 if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was

7  caused by the Data Security Incident; (3) the loss occurred between October 10, 2023, and the Claims

8  Deadline; and (4) the member of the Settlement Class made reasonable efforts to avoid, or seek

9  reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring

10 insurance and identity theft insurance, but was not previously reimbursed for the claimed expense or

11 loss.

12     2.3    Members of the Settlement Class seeking reimbursement under ¶ 2.2 must complete and

13 submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before the 90th

14 day after the Notice Commencement Date. The notice to the Settlement Class will specify this deadline

15 and other relevant dates described herein. The Claim Form must be verified by the member of the

16 Settlement Class with a statement that his or her claim is true and correct, to the best of his or her

17 knowledge and belief. Notarization shall not be required. The member of the Settlement Class must

18 submit reasonable documentation that the out-of-pocket expenses and charges claimed were both

19 actually incurred and plausibly arose from the Data Security Incident. Failure to provide supporting

20 documentation of the out-of-pocket expenses referenced above, as requested on the Claim Form, shall

21 result in the denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved

22 pursuant to the provisions stated herein.

23     2.4    <u>Dispute Resolution for Claims</u>.

24       2.4.1    The Claims Administrator, in its sole discretion to be reasonably exercised, will

25 determine whether: (1) the Claimant is a Settlement Class Member; (2) the Claimant has provided all

26 information needed to complete the Claim Form, including any documentation that may be necessary to

27 reasonably support a claim for out-of-expenses described in ¶ 2.2; and (3) the information submitted

28 could lead a reasonable person to conclude that more likely than not the Claimant has suffered the

claimed losses as a result of the Data Security Incident. The Claims Administrator may, at any time, request from the Claimant, in writing, additional information as the Claims Administrator may reasonably require in order to evaluate the claim, e.g., documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof. For any such Claims that the Claims Administrator determines to be implausible, the Claims Administrator will submit those Claims to the Settling Parties (one Plaintiff's lawyer shall be designated to fill this role). If the Settling Parties do not agree with the Claims Administrator's determination, after meeting and conferring, then the Claim shall be referred to a resolution to the claim referee, to be selected by the Parties if needed. Any costs associated with work performed by the claims referee shall be out of the Settlement Fund, as part of the Costs of Administration.

2.4.2   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information and give the Claimant thirty (30) days to cure the defect before rejecting the claim. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.4.3   Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after reviewing the claim and all documentation submitted by the Claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid. If the claim is not facially valid because the Claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Claims Administrator may reject the claim without any further action.

2.4.4   Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination. If the Claimant approves the final determination, then the approved amount shall be the amount to be paid. If

**Settlement Agreement**

1  the Claimant does not approve the final determination within thirty (30) days, then the dispute shall be

2  submitted to the Settling Parties. If the Settling Parties do not agree with the Claims Administrator's

3  determination or are unable to reach a mutually satisfactory resolution after meeting and conferring,

4  then the Claim shall be referred for resolution to the claim referee, to be selected by the Parties if needed.

5     2.4.5 If any dispute is submitted to the claims referee, the claims referee may approve

6  the Claims Administrator's determination by making a ruling within fifteen (15) days. The claims

7  referee may make any other final determination of the dispute or request further supplementation of a

8  claim within thirty (30) days. The claims referee's determination shall be based on whether the claims

9  referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely

10  than not caused by the Data Security Incident. The claims referee shall have the power to approve a

11  claim in full or in part. The claims referee's decision will be final and non-appealable. Any Claimant

12  referred to the claims referee shall reasonably cooperate with the claims referee, including by either

13  providing supplemental information as requested or, alternatively, signing an authorization allowing the

14  claims referee to verify the claim through third-party sources, and failure to cooperate shall be grounds

15  for denial of the claim in full. The claims referee shall make a final decision within thirty (30) days of

16  receipt of all supplemental information requested. The Parties shall jointly select an acceptable claims

17  referee if the need for one arises under the terms of this section.

18    2.5 *Pro Rata* Settlement Adjustment and Distribution of the Settlement Remainder. If there

19  is a Settlement Remainder, it shall be distributed as a residual *pro rata* cash payment based on shares to

20  Settlement Class Members who submit a Valid Claim to receive this benefit, with each Claimant who

21  is not a California resident receiving one (1) share of the Settlement Remainder, and each Claimant that

22  is a California Resident receiving two total (2) shares of the Settlement Remainder. Class Members

23  submitting a claim for reimbursement of documented out-of-pocket expenses shall be automatically

24  deemed to have requested this cash payment as well regardless of the validity of their claim for

25  reimbursement of such losses and/or expenses. The enhanced allocation of shares for California

26  Residents is intended to account for and resolve claims for statutory damages that may be available to

27  California Residents under the CCPA, Cal. Civ. Code § 1798, *et seq.* as described in ¶¶1.24, 1.35 above.

28  To qualify as a California Resident for the purposes of this benefit, Settlement Class Members will have

1    to provide proof of California residency. A sworn attestation shall satisfy the proof requirement for

2    California residency. All Class Members may submit claims for a share of the Settlement Remainder

3    (or for two shares, in the case of California Residents), regardless of whether they have incurred any

4    out-of-pocket losses related to the Data Security Incident. In the unexpected event that the Settlement

5    Fund is insufficient to cover the value of the Valid Claims, the Valid Claims shall be reduced *pro rata*

6    on an equal percentage basis as necessary to bring the cost within the Settlement Fund.

7        2.6    Business Practices. ASM has agreed to provide a declaration confirming that it has

8    implemented certain administrative and technical cybersecurity measures and that it will implement an

9    additional procedural measure within 90 days of the Effective Date. For security purposes, however,

10   these measures will remain confidential but may be produced for *in camera* review should the Court

11   request it.

12       2.7    Confirmatory Discovery. ASM has provided reasonable access to confidential

13   confirmatory discovery regarding (1) the total number of Settlement Class Members; (2) the number of

14   California Residents; (3) the number of Settlement Class Members affected by each distinct combination

15   or variation of Private Information; (4) the facts and circumstances surrounding the Data Security

16   Incident; and (5) the changes and enhancements that have been made or are being made to further protect

17   Settlement Class Members' Private Information.

18       2.8    Settlement Class Certification. The Settling Parties agree, for purposes of this settlement

19   only, to the certification of the Settlement Class. If the settlement set forth in this Settlement Agreement

20   is not approved by the Court, or if the Settlement Agreement is terminated or canceled pursuant to the

21   terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement

22   Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement

23   Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue

24   of class certification or any other issue. The Settling Parties' agreement to the certification of the

25   Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other

26   proceeding, case or action, as to which all of their rights are specifically preserved.

27       **3.**    **Order of Preliminary Approval and Publishing of Notice of Fairness Hearing**

28       3.1    As soon as practicable after the execution of the Settlement Agreement, Proposed

Settlement Class Counsel and counsel for ASM shall jointly submit this Settlement Agreement to the Court, and Proposed Settlement Class Counsel will file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form to be agreed upon by the parties attached hereto as **Exhibit D**, or an order substantially similar to such form in both terms and cost, requesting, among other things:

        a)      certification of the Settlement Class for settlement purposes only;

        b)      preliminary approval of the Settlement Agreement as set forth herein;

        c)      appointment of Proposed Settlement Class Counsel as Settlement Class Counsel;

        d)      appointment of Plaintiff as Class Representative;

        e)      approval of a customary form of Short Notice to be mailed to Settlement Class Members in a form substantially similar to the one attached as **Exhibit A** to this Agreement;

        f)      approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to the one attached as **Exhibit B** to this Agreement, which, together with the Short Notice, shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing; and

        g)      appointment of Simpluris as the Claims Administrator.

The Short Notice and Long Notice have been reviewed and approved by the Claims Administrator but may be revised as agreed upon by the Settling Parties prior to submission to the Court for approval.

       3.2     ASM shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration from the Settlement Fund. Attorneys' fees, costs, and expenses of Settlement Class Counsel, and any service award to the Representative Plaintiff, as approved by the Court, shall be paid

from the Settlement Fund. Notice shall be provided to Settlement Class Members by the Claims Administrator as follows:

a) *Class Member Information*: No later than fourteen (14) days after entry of the Preliminary Approval Order, ASM shall provide the Claims Administrator with the name and last known physical address of each Settlement Class Member (collectively, "Class Member Information") as available from the final Data Security Incident notice materials.

- The Class Member Information and its contents shall be used by the Claims Administrator solely for the purpose of performing its obligations pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement, or provide all data and information in its possession to the Settling Parties upon request, the Claims Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

b) *Settlement Website:* Prior to the dissemination of the Class Notice, the Claims Administrator shall establish the Settlement Website that will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates, deadlines, and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement; (v) the operative Class Action Complaint filed in the Litigation; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically.

c) *Short Notice:* Within thirty (30) days after the entry of the Preliminary Approval Order and to be substantially completed not later than forty-five (45) days after

---

15

**Settlement Agreement**

1    entry of the Preliminary Approval Order, and subject to the requirements of this

2    Agreement and the Preliminary Approval Order, the Claims Administrator will

3    provide notice to the Settlement Class as follows:

4           • To all class members for whom ASM provided a postal address.

5             Before any mailing under this Paragraph occurs, the Claims

6             Administrator shall run the postal addresses of Settlement Class

7             Members through the United States Postal Service ("USPS")

8             National Change of Address database to update any change of

9             address on file with the USPS;

10          • in the event that a mailed Short Notice is returned to the Claims

11            Administrator by the USPS because the address of the recipient is

12            no longer valid, and the envelope contains a forwarding address,

13            the Claims Administrator shall re-send the Short Notice to the

14            forwarding address within seven (7) days of receiving the returned

15            Short Notice;

16          • in the event that subsequent to the first mailing of a Short Notice,

17            and at least fourteen (14) days prior to the Opt-Out and Objection

18            Deadline, a Short Notice is returned to the Claims Administrator

19            by the USPS because the address of the recipient is no longer

20            valid, i.e., the envelope is marked "Return to Sender" and does not

21            contain a new forwarding address, the Claims Administrator shall

22            perform a standard skip trace, in the manner that the Claims

23            Administrator customarily performs skip traces, in an effort to

24            attempt to ascertain the current address of the particular

25            Settlement Class Member in question and, if such an address is

26            ascertained, the Claims Administrator will re-send the Short

27            Notice within seven (7) days of receiving such information. This

28            shall be the final requirement for mailing.

**Settlement Agreement**

d)     Publishing, on or before the Notice Commencement Date, the Short Notice, Claim Form, and Long Notice on the Settlement Website, as specified in the Preliminary Approval Order, and maintaining and updating the website throughout the claim period;

e)     A toll-free help line staffed with live agents shall be made available to provide Settlement Class Members with additional information about the settlement. The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and paper Claim Form, as well as this Settlement Agreement, upon request; and

f)     Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with this provision of notice.

3.3     The Short Notice, Long Notice, and other applicable communications to the Settlement Class may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be substantially completed within forty-five (45) days after entry of the Preliminary Approval Order.

3.4     Proposed Settlement Class Counsel and ASM's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.5     ASM will also cause the Claims Administrator to provide the CAFA Notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act. The cost of such notice shall be paid for from the Settlement Fund.

**4.     Opt-Out Procedures**

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement

17

**Settlement Agreement**

1    Class. To be effective, written notice must be postmarked no later than sixty (60) days after the Notice

2    Commencement Date.

3        4.2    All Persons who submit valid and timely notices of their intent to opt-out of the

4    Settlement Class, as set forth above, referred to herein as "Opt-Outs," shall not receive any benefits of

5    and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of

6    the Settlement Class who do not opt-out of the Settlement Class in the manner set forth above shall be

7    bound by the terms of this Settlement Agreement and Judgment entered thereon. Within seven (7) days

8    after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Settlement Class Counsel

9    and to ASM's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

10       **5.    Objection Procedures**

11       5.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall

12   submit a timely written notice of his or her objection by the Objection Date. All written objections and

13   supporting papers must be submitted ONLY TO THE COURT and (a) clearly identify the case name

14   and number (*Shea Hoover v. ASM Global Parent, Inc.,* Case No. 2:24-cv-10794-WLH-PVC); (b) state

15   the objector's full name, address, telephone number (if any), and email address (if any); (c) provide

16   information identifying the objector as a Settlement Class Member; (d) include a written statement of

17   the grounds for objection, accompanied by any legal support the objector wishes to submit; (e) state the

18   number of times the objector has objected to a class action settlement within the past 3 years preceding

19   the date that the objector files the objection including the case name, court, and docket number of each

20   case in which the objector has made such an objection; (f) confirm whether the objector or a lawyer

21   representing the objector intends to personally appear and/or testify at the Final Approval Hearing; and

22   (g) include the objector's signature or the signature of the objector's duly authorized lawyer or

23   representative. Each objection must be submitted to the Court either by filing them electronically or in

24   person at any location of the United States District Court for the Central District of California, or by

25   mailing them to the Class Action Clerk, United States District Court for the Central District of California

26   (Western Division) at First Street U.S. Courthouse, 350 W 1st Street, Courtroom 9B, 9th Floor, Los

27   Angeles, CA 90012, and be filed or postmarked on or before the deadline established by the Court

28   (anticipated to be 60 days after the Notice Date). All objections will be scanned into the electronic case

1  docket, and the parties will receive electronic notices of all filings.

2      5.2    Any Settlement Class Member who fails to comply with the requirements for objecting

3  in ¶5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object

4  to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by

5  all proceedings, orders, and judgments in the Litigation. The exclusive means for any challenge to the

6  Settlement Agreement shall be through the provisions of ¶5.1. Without limiting the foregoing, any

7  challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the

8  Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of

9  Appellate Procedure and not through a collateral attack.

10     **6.     Releases**

11     6.1    Upon the Effective Date, each Settlement Class Member, including Plaintiff, shall be

12  deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released,

13  relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest

14  extent permitted by law, each Settlement Class Member, including Plaintiff, shall, either directly,

15  indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be

16  permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any

17  action in this or any other forum (other than participation in the settlement as provided herein) in which

18  any of the Released Claims is asserted.

19     **7.     Plaintiff's Counsel's Attorneys' Fees, Costs, and Expenses; Service Award to**
20           **Representative Plaintiff**

21     7.1    The Settling Parties did not discuss the amount of attorneys' fees, costs, expenses, and/or

22  service award to Plaintiff, as provided for in ¶¶ 7.2-7.3, that Plaintiff and Proposed Class Counsel may

23  seek until after the substantive terms of the Settlement had been agreed upon.

24     7.2    Within forty-five (45) days of the Notice Commencement Date, Proposed Settlement

25  Class Counsel will seek an order from the Court awarding up to 25% of the Settlement Fund to Proposed

26  Settlement Class Counsel for attorneys' fees. Proposed Settlement Class Counsel may also seek an order

27  from the Court awarding up to $10,000.00 in unreimbursed litigation costs and expenses. Proposed

28  Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys'

1  fees, costs, and expenses awarded by the Court among Plaintiff's Counsel.

2      7.3    Within forty-five (45) days of the entry of the Notice Commencement Date, Proposed

3  Settlement Class Counsel will seek an order from the Court awarding up to $3,000.00 in service awards

4  to the Representative Plaintiff.

5      7.4    If awarded by the Court, the Claims Administrator shall pay the attorneys' fees, costs,

6  expenses, and service awards to Plaintiff, as set forth above in ¶¶ 7.2-7.3, out of the Settlement Fund

7  within twenty-one (21) days after the Effective Date. The award of Attorneys' fees and expenses for

8  Proposed Class Counsel and of a service award to Plaintiff shall be wired to Stranch, Jennings & Garvey,

9  PLLC via wiring instructions to be provided after Final Approval, if such Final Approval is ordered by

10 this Court. Proposed Settlement Class Counsel shall thereafter distribute the award of attorneys' fees,

11 costs, and expenses among Plaintiff's Counsel and the service award to Plaintiff consistent with ¶¶ 7.2-

12 7.3.

13     The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to

14 Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the

15 fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or

16 reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs,

17 expenses, and/or service award ordered by the Court to Proposed Settlement Class Counsel or Plaintiff

18 shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this

19 Settlement Agreement.

20     **8.    Administration of Claims**

21     8.1    The Claims Administrator shall administer and calculate the claims submitted by

22 Settlement Class Members. Proposed Settlement Class Counsel and counsel for ASM shall be given

23 reports as to both claims and distribution and have the right to review and obtain supporting

24 documentation and challenge such reports if they believe them to be inaccurate or inadequate. The

25 Claims Administrator's and the claims referee's, as applicable, determination of whether a Settlement

26 Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth herein. All

27 claims agreed to be paid in full by ASM shall be deemed valid.

28     8.2    Checks for Valid Claims and/or compensation from the Settlement Remainder shall be

1   mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the

2   date that the claim is approved, whichever is later.

3       8.3     Upon the mailing of checks as set forth in ¶ 8.2, all Settlement Class Members shall be

4   forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but

5   will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the

6   releases contained herein and the Judgment.

7       8.4     No Person shall have any claim against the Claims Administrator, claims referee, ASM,

8   Proposed Settlement Class Counsel, Plaintiff, and/or ASM's counsel based on distributions of benefits

9   to Settlement Class Members.

10      **9.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

11      9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the

12  following events:

13          a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice

14                  of a Final Fairness Hearing, as required by provisions herein;

15          b)      the Settling Parties have not exercised the option to terminate the Settlement

16                  Agreement;

17          c)      the Court has entered the Judgment granting final approval to the settlement as

18                  set forth herein; and

19          d)      the Judgment has become Final, as defined herein.

20      9.2     Plaintiff and ASM shall each have the right to terminate this Agreement by providing

21  written notice of their election to do so to each other within seven (7) days of: (1) the Court declining to

22  enter the Preliminary Approval Order in a form materially consistent with **Exhibit D**; (2) the court

23  declining to enter the Final Approval Order in a form materially consistent with **Exhibit E** (other than

24  determining, in the Court's sole discretion, the amount of the attorneys' fees and expenses and service

25  award in accordance with this Agreement); (3) the date upon which the Final Approval Order or

26  Judgment is modified or reversed in any material respect by an appellate court, which indicates that the

27  Settlement cannot be approved if the Parties make revisions that are materially consistent with this

28  Settlement Agreement (except with respect to the amount of the attorneys' fees and expenses or service

1    awards sought). In addition, ASM shall have the right to terminate this Settlement Agreement by

2    providing written notice to Plaintiff of its election to do so within seven (7) days of ASM's receipt of

3    the Opt-Out-List, if more than 200 individuals are on the Opt-Out-List. Finally, the Parties can terminate

4    this Settlement Agreement by mutual agreement before the Court enters the Final Approval Order. If an

5    option to terminate this Settlement Agreement arises under this Paragraph, no Party is required for any

6    reason or any circumstance to exercise that option. Notwithstanding any statement in this Settlement

7    Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order

8    reducing the amount of attorneys' fees, costs, expenses and/or service awards shall constitute grounds

9    for cancellation or termination of the Settlement Agreement.

10    9.3    In the event that the Settlement Agreement or the releases set forth above are not

11    approved by the Court or the settlement set forth in the Settlement Agreement is terminated in

12    accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the

13    Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the

14    Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (ii) the terms and

15    provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling

16    Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any

17    judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall

18    be treated as vacated, *nunc pro tunc*. In the event of such termination, all Parties' respective pre-

19    Settlement rights, claims, and defenses will be retained and preserved. Notwithstanding any statement

20    in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal

21    of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall

22    constitute grounds for cancellation or termination of the Settlement Agreement.

23    9.4    If this Settlement Agreement is terminated or fails to become effective, all funds in the

24    Settlement Fund shall be promptly returned to ASM. However, ASM shall be obligated to pay amounts

25    already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute

26    Resolution pursuant to the above and shall not, at any time, seek recovery of same from any other party

27    to the Litigation or from counsel to any other party to the Litigation. After payment of any Claims

28    Administration and Dispute Resolution that have been incurred and are due to be paid from the

Docusign Envelope ID: F0AF43BE-BC2B-4581-8148-C2EBEDA9F9D2

Settlement Fund, the Claims Administrator shall return the balance of the Settlement Fund to ASM within twenty-one (21) days of termination.

**10.    Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth herein.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument

1    signed by or on behalf of all Settling Parties or their respective successors-in-interest.

2        10.5    This Agreement contains the entire understanding between ASM and Plaintiff regarding

3    the payment of the Litigation settlement and supersedes all previous negotiations, agreements,

4    commitments, understandings, and writings between ASM and Plaintiff in connection with the payment

5    of the Litigation settlement. Except as otherwise provided herein, each party shall bear its own costs.

6        10.6    Proposed Settlement Class Counsel, on behalf of the Settlement Class, is expressly

7    authorized by Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement

8    Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to

9    enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement

10   Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to

11   ensure fairness to the Settlement Class.

12       10.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party

13   hereto hereby warrants that such Person has the full authority to do so.

14       10.8    The Settlement Agreement may be executed in one or more counterparts. All executed

15   counterparts and each of them shall be deemed to be one and the same instrument. A complete set of

16   original executed counterparts shall be filed with the Court.

17       10.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the

18   successors and assigns of the parties hereto.

19       10.10   The Court shall retain jurisdiction with respect to the implementation and enforcement

20   of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court

21   for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

22       10.11   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him"

23   means "him, her, or it."

24       10.12   All dollar amounts are in United States dollars (USD).

25       10.13   Cashing a settlement check is a condition precedent to any Settlement Class Member's

26   right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance

27   and shall bear the language: "This check must be cashed within ninety (90) days, after which time it is

28   void." If a check becomes void, the Settlement Class Member shall have until six months after the

Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and ASM shall have no obligation to make payments to the Settlement Class Member for expense reimbursement or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.14 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

10.15 Each Party acknowledges, agrees, and specifically warrants that he has fully read this Settlement Agreement and the Releases contained therein, received independent legal advice with respect to the advisability of entering into this Settlement Agreement and the Releases and their legal effects and fully understands the effect of this Settlement Agreement and the Releases.

10.16 Neither Plaintiff nor ASM shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

10.17 The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

10.18 Before filing any motion in the Court raising a dispute arising out of or related to this Settlement Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed.

**AGREED TO BY:**

**Plaintiff, Shea Hoover**

By: _Shea Hoover_
6/26/2025 | 5:30 AM PDT

By: _____
6/25/2025 | 4:33 PM PDT

**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORPORATION**
M. Anderson Berry (SBN 262879)
*aberry@justice4you.com*
Gregory Haroutunian (SBN 330263)
*gharoutunian@justice4you.com*
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)239-4778
Fax: (916) 924-1829

By: _____
6/25/2025 | 5:16 PM CDT

**STRANCH, JENNINGS & GARVEY**
J. Gerard Stranch, IV (TN BPR 23045)*
Robert Bruce Grayson Kent Wells (TN BPR 039658)*
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Pro Hac Vice*

*Counsel for Plaintiff and*
*the Proposed Settling Class*

**Defendant, ASM Global Parent, Inc.**

By: _____    6/27/2025

Its: ___SVP, General Counsel___

By: _Michelle Visser_    6/27/2025

**ORRICK, HERRINGTON & SUTCLIFFE,**
**LLP**
Michelle Visser, Esq.
*mvisser@orrick.com*
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5518
Fax: (415) 773-5759

*Counsel for Defendant ASM Global Parent, Inc.*

---

26

**Settlement Agreement**