M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Telephone: (916) 823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

J. Gerard Stranch, IV
Robert Bruce Grayson Kent Wells
**STRANCH, JENNINGS & GARVEY**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SHEA HOOVER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br>    v.<br><br>ASM GLOBAL PARENT, INC.,<br><br>                Defendant. | CASE NO. 2:24-cv-10794-WLH-PVC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        January 30, 2026<br>Time:        8:30 a.m.<br>Courtroom:  9B<br>Judge:      Hon. Wesley L. Hsu |

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  2:24-cv-10794-WLH-PVC

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 30, 2026, at 8:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 9B, 9th Floor of the United States District Court for the Central District of California, First Street U.S. Courthouse, 350 W 1st Street, Los Angeles, California 90012, the Honorable Judge Wesley L. Hsu, presiding, Plaintiff Shea Hoover ("Plaintiff") hereby does and will move the Court an Order for final approval of the Settlement and certification of the Settlement Class pursuant to Rules 23(e) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rule(s)").

In so moving, Plaintiff respectfully requests the Court: (1) approve the Corrected Class Action Settlement Agreement ("Settlement Agreement" or "SA") as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiff as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class Counsel M. Anderson Berry and Gregory Haroutunian of Emery Reddy, PC, J. Gerard Stranch, IV, and Grayson Wells of Stranch, Jennings & Garvey, PLLC; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of Gregory Haroutunian and Grayson Wells in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Joint MFA Decl."), the Declaration of Orlando Castillejos of Simpluris Regarding Notice and Settlement Administration ("Simpluris Decl.") and all exhibits attached thereto, pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION………………………………………………………… 1

II.   STATEMENT OF FACTS……………………………………………….... 2

III.  PROCEDURAL HISTORY……………………………………………… 2

IV.   THE SETTLEMENT TERMS…………………………………………… 3

    A.    The Settlement Class…………………………………………… 3

    B.    Settlement Benefits……………………………………………… 4

        1.    Monetary Relief…………………………………………… 4

        2.    Non-Monetary Settlement Benefits – Business Practice Changes……………………………………………………... 4

        3.    Class Notice and Settlement Administration………………. 5

    C.    Attorneys' Fees and Expenses and Service Award……………….. 5

    D.    Release………………………………………………………… 6

V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS………. 6

VI.   LEGAL ARGUMENT…………………………………………………… 7

    A.    The Court Should Certify the Class for Settlement Purposes…….. 7

        1.    The Rule 23(a) Requirements are Met for Purposes of Settlement……………………………………………….. 7

        2.    The Requirements of Rule 23(b)(3) are Met for Purposes Of Settlement…………………………………………… 9

    B.    The Court Should Finally Approve the Settlement………………. 11

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  2:24-cv-10794-WLH-PVC

-i-

1.  The Strength of Plaintiff's Case……………………………… 12

2.  The Risk, Expense, Complexity, and Likelt Duration of Further Litigation…………………………………………….. 13

3.  The Risk of Maintaining Class Action Status Through Trial……………………………………………………….... 14

4.  Amount Offered in Settlement……………………………….. 15

5.  The Extent of Discovery Completed and the Stage of Proceedings…………………………………………………… 16

6.  The Experience and Views of Counsel……………………... 17

7.  The Reaction of the Class Members to the Proposed Settlement…………………………………………………... 17

8.  Lack of Collusion Among the Parties………………………. 18

9.  The Settlement Treats Settlement Class Members Equitably. 18

C.  The Court Should Affirm its Appointment of Settlement Class Counsel and Class Representative…………………………….. 19

D.  The Notice Program Comports with Due Process………………. 19

VII.  CONCLUSION……………………………………………………….. 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page</u>

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 7, 9, 10

*Atkinson v. Minted, Inc.*,
    No. 3:20-cv-03869-VC, 2021 U.S. Dist. LEXIS 244257
    (N.D. Cal. Dec. 17, 2021).........................................................7, 16

*Beasley v. TTEC Servs. Corp.*,
    No. 22-CV-00097-PAB-STV, 2024 WL 710411 (D. Colo. Feb. 21, 2024)........13

*Calderon v. Wolf Firm*,
    2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ....................................17

*Capaci v. Sports Rsch. Corp.*,
    No. CV 19-3440 FMO, 2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ...............9

*Carter v. Vivendi Ticketing US LLC*,
    No. SACV 22-01981-CJC, 2023 WL8153712 (C.D. Cal.)...................................6

*Charlebois v. Angels Baseball, LP*,
    2011 WL 2610122 (C.D. Cal. June 30, 2011) ..................................... 7

*Chester v. TJX Cos.*,
    No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788
    (C.D. Cal. Dec. 5, 2017)...........................................................12

*Chua v. City of L.A.*,
    2017 WL 10776036 (C.D. Cal. May 25, 2017)....................................10

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)......................................................20

*Cochran, et al. v. Kroger Co.*,
    No. 5:21-cv-01887 (N.D. Cal.) ......................................................7

*Corona v. Sony Pictures Entertainment, Inc.*,
    No. 2:14-cv-9600 (C.D. Cal.) ......................................................7

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .......................................................................................20

*Dennis v. Kellogg Co*.,
    No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ..........12

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ........................................................................7, 9

*Forcellati v. Hyland's, Inc*.,
    No. cv 12-1983-GHK, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)....................8

*Franklin v. Kaypro Corp*.,
    884 F.2d 1222 (9th Cir. 1989) .........................................................................12

*Gordon v. Chipotle Mexican Grill, Inc*.,
    No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .........................14

*Gregorson v. Toshiba America Business Solutions, Inc*.,
    No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589 (C.D Cal. 2025) .................11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................................ passim

*Hashemi v. Bosley*,
    2022 WL 2155117 (C.D. Cal. 2022) ........................................................ passim

*Hillman v. Lexicon Consulting, Inc*.,
    No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869
    (C.D. Cal. April 27, 2017)...............................................................................17

*Hudson v. Libre Technology Inc.,*
    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) .....19

*In re Anthem Inc. Data Breach Litig*.,
    327 F.R.D. 299 (N.D. Cal. 2018) ...............................................................13, 15

*In re Bluetooth Headset Prods. Liab. Litig*.,
    654 F.3d 935 (9th Cir. 2011)..................................................................... ii, 12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  2:24-cv-10794-WLH-PVC

-iv-

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...............................................................15

*In re Equifax Customer Data Sec. Breach Litig.*,
  2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) .......................16

*In re Google LLC St. View Elec. Communs. Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................................ 8

*In re Hyundai & Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ..............................................................8

*In re MRV Communs., Inc. Derivative Litig.*,
  No. CV 08–03800 GA, 2013 WL 2897874 (C.D. Cal. June 6, 2013) ...............15

*In re Netgain Tech., LLC*,
  No. 21-cv-1210, 2025 WL 3063288 (D. Minn. Nov. 3, 2025) ...........................13

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  2019 WL 3410382 (D. Or. July 29, 2019) ............................................ 8

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
  No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ..................13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............19

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  2015 WL 7253765 (D. Minn. Nov. 17, 2015) .......................................14

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .........................................................8, 11

*Keegan v. Am. Honda Motor Co*,
  284 F.R.D. 504 (C.D. Cal. 2012) ......................................................10

*Krant v. UnitedLex Corp.*,
  No. 23-2443-DDC-TJJ, No. 2024 WL 5187565 (D. Kan. Dec. 20, 2024) ..........13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 13, 17

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) .............................................................. 9

*McDaniel v. Toshiba Glob. Com. Sols., Inc.*,
    No. 8:24-cv-01772-FWS-ADS, 2025 WL 3190888 (C.D. Cal. Oct. 3, 2025) ..... 13

Meyer v Portfolio Recovery Associates,
    707 F.3d 943 (9th Cir. 2012) ................................................................... 8

*Mikell v. Tycon Med. Sys., Inc.*,
    No. 2;25-cv-19, 2025 WL 720001 (E.D. Va. Mar. 6, 2025) ............................ 13

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 18

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
    No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ......................................... 11

*Paz v. AG Adriano Goldschmeid, Inc.*,
    No. 14cv1372, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) .......................... 14

*Reynoso v. All Power Mfg. Co.*,
    No. SACV 16-1037 JVS, 2018 WL 5906645 (C.D. Cal. Apr. 30, 2018) ........... 10

*Sankar v. Cal. Northstate Univ., LLC*,
    No. 2:24-cv-00473-DAD-JDP, 2025 WL 3539089 (E.D. Cal. Dec. 10, 2025) ... 20

*Smith v. Specialty Networks LLC*,
    No. 1:24-cv-286, 2025 WL 1944022 (E. D. Tenn. July 15, 2025) .................. **13**

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ........................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 7

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)..................................................................9


**Rules**

Fed. R. Civ. P. 23(a)..................................................................................7

Fed. R. Civ. P. 23(a)(3)..............................................................................8

Fed. R. Civ. P. 23(a)(4)..............................................................................9

Fed. R. Civ. P. 23(b)(1), (2) or (3)...........................................................9

Fed. R. Civ. P. 23(b)(3)..........................................................................9, 10

Fed. R. Civ. P. 23(c)(2)(B)Fed. R. Civ. P. 23(e) ............................. 11, 19

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................19

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) .............................................................

Fed. R. Civ. P. 23(g)(1)(B) .....................................................................


**Other Authorities**

4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ........................18

MANUAL FOR COMPLEX LITIG. (4th ed. 2004)........................................7

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No.  2:24-cv-10794-WLH-PVC

-vii-

## I.    **INTRODUCTION**

Plaintiff, through his undersigned counsel, respectfully moves this Court for entry of an order granting final approval to the settlement memorialized in the Corrected Class Action Settlement Agreement (hereinafter "Settlement Agreement" or "SA"), ECF No. 35-1,[1] that, subject to the Court's approval, will resolve this class action lawsuit. The parties filed the original settlement agreement together with Plaintiff's Unopposed Motion for Preliminary Approval ("MPA"), ECF No. 27–28, on July 2, 2025. On September 3, 2025, the Court conditionally certified the Settlement Class as defined in the SA; appointed Plaintiff as Settlement Class Representative, appointed Anderson Berry; Gregory Haroutunian, J. Gerard Stranch, IV, and Grayson Wells as Settlement Class Counsel ("Settlement Class Counsel"); and conditionally approved the Notice plan subject to its amendment to include email notification. Ord. re Mtn. for Preliminary Approval of Class Action Settlement (the "PAO"), ECF No. 34. Thereafter, the ordered revisions were incorporated into the Settlement Agreement submitted to the Court on September 17, 2025. Decl. of Grayson Wells in Supp. of Unopposed Mtn. For Preliminary Approval, ECF No. 35.

This settlement—which makes available to every Settlement Class Member considerable monetary relief—represents an excellent resolution of this high-risk, complex litigation. The Parties also worked diligently and cooperatively to deliver the best Notice practicable to the Settlement Class. Indeed, the Settlement Agreement provides direct notice via email and/or United Stated Postal Service Mail. SA ¶ 3.2. Moreover, the Settlement Agreement provides for the creation of a toll-free number and website to disseminate information to Settlement Class Members. *Id*. ¶ 3.2(b).

The Claims Deadline was January 2, 2026, and the Objection and Opt-Out Deadline was December 2, 2025. *See* SA ¶¶ 1.7, 1.19–.20. The reaction of the Settlement Class has been overwhelmingly positive. With the exclusion and objection

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-1-

deadline long since passed, in response to the 4,648 mailed Short Notices and the 413 Email Notices, zero objections have been filed and no individuals have requested exclusion from this settlement. Moreover, 311claims have already been received by the Claims Administrator, representing an impressive 6.7% claims rate.

The settlement undoubtedly is fair, reasonable, and adequate, as the Court preliminarily found in its PAO. This Court should now finally certify the Settlement Class for settlement purposes only, and finally approve the settlement as fair, reasonable, and adequate.

## II.   **STATEMENT OF FACTS**

On or about October 12, 2023, Defendant ASM Global Parent, Inc. ("ASM" or "Defendant") detected unauthorized activity affecting certain on-premises servers supporting an application known as Solomon, an enterprise resource planning tool. *See* SA 1. Plaintiff alleges that, as a result of the Data Security Incident, cybercriminals accessed and obtained sensitive and confidential personal information belonging to Plaintiff and Class Members, including names, dates of birth, Social Security numbers, driver's license or state identification numbers, passport numbers, and/or credit or debit card numbers, along with associated CVV codes and expirations dates (collectively, "personally identifiable information" or "PII"), as well as medical diagnosis and treatment information ("protected health information" or "PHI") in a limited number of circumstances (collectively, "PII" or "PHI" shall be referred to hereinafter as "Private Information" unless otherwise specified). *Id.* at 1–2. Following the discovery of the Data Security Incident, ASM identified approximately 4,678 individuals, including 550 California residents, whose Private Information was impacted, and on November 12, 2024, began to notify said individuals. *See* Admin. Decl. 7; *id.* at 2.

## III.  **PROCEDURAL HISTORY**

On December 13, 2024, Plaintiff Shea Hoover filed a lawsuit asserting claims against ASM relating to the Data Security Incident in the United States District Court

for the Central District of California. *See* Compl. Plaintiff filed this action on behalf of himself, and all individuals whose Private Information was compromised in the Data Security Incident and to whom Defendant sent an individual notification that they were affected. *See id.* ¶ 72. Plaintiff brings causes of actions for negligence and negligence *per se*, *id.* ¶¶ 84–103, breach of implied contract, *id.* ¶¶ 104–15, and breach of bailment. *Id.* ¶¶ 116–20. ASM denies the allegations and all liability. SA, at 3.

After filing the Complaint, Plaintiff's counsel continued to investigate the facts of the Data Security Incident and Defendant's responsive measures, leading to informed settlement negotiations. Joint MFA Decl. ¶ 6. Over the course of the next several months, the Parties engaged in extensive, arms'-length settlement negotiations over. *Id.* ¶ 7. After spending considerable time and effort negotiating, the parties reached an agreement on the principal terms of a classwide settlement and eventually executed the original settlement agreement dated June 25, 2025. SA, at 1. Plaintiff then moved for Preliminary Approval on July 2, 2025, which this Court granted on September 3, 2025—subject to the ordered revisions. *See* PAO. Thereafter, the Parties implemented the Court ordered revisions to the Settlement Agreement and the Settlement Administrator began the notice program. Joint MFA Decl. ¶ 8.

## IV.    **THE SETTLEMENT TERMS**

### A.    **The Settlement Class**

The Settlement provides relief for the following Class: "[A]ll United States Residents whose Private Information was compromised in the Data Security Incident detected by ASM on or about October 12, 2023. The Settlement Class specifically excludes: (i) ASM, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and immediate family; and (iv) any other Person found by a court of competent jurisdiction to be

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads nolo contendere to any such charge." SA ¶ 1.30.

The Court granted provisional certification of the Settlement Class for settlement purposes. PAO, at 9. On September 16, 2025, Counsel for Defendant provided Simpluris with a data file, and after analyzing the file for duplicate and incomplete records, the final Class List was confirmed to contain 4,678 Settlement Class Members. Simpluris Decl. ¶ 7.

### B.    Settlement Benefits

#### 1.    Monetary Relief

The Settlement provides significant relief to the Class through a $350,000 common settlement fund. Under the Settlement, any member of the Class who has suffered a monetary loss due to the Data Security Incident is eligible to receive up to $10,000 for Out-of-Pocket Expense reimbursement. SA ¶¶ 2.1–2.2.

In addition to the Out-of-Pocket Expense Reimbursement, the Settlement Agreement also provides for *pro rata* payments to all Settlement Class Members who submit claims for such. *Id.* ¶ 2.5. The *pro rata*-payments will be made as follows: each Settlement Class Member who selects this benefit will receive one (1) share of the Settlement Remainder, and each Settlement Class Member that is a California Resident will receive two (2) total shares of the Settlement Remainder, in recognition of their statutory claims. Settlement Class Members who submit a claim of Out-Of-Pocket Expenses will automatically be deemed to have submitted a claim for one (1) share of the Settlement Remainder, unless they indicate on the Claim Form that they are a California resident and are seeking two (2) shares. *Id*. California Residents must provide proof of California residency. *Id*.

#### 2.    Non-Monetary Settlement Benefits – Business Practice Changes

In addition to the potential cash benefits, Defendant has implemented certain administrative and technical cybersecurity measures. These measures will benefit

Class Members whose information remains in Defendant's possession, and also those who entrust their Private Information to Defendant in the future.

### 3. Class Notice and Settlement Administration

The parties agreed to the appointment of Simpluris as Claims Administrator and Simpluris's costs will be paid from the Settlement Fund. *Id.* ¶ 3.3. Notice was given to the Class via individual notice, sent by first-class mail and email. Simpluris Decl. ¶¶ 8–14.

After deleting duplicates from the initial list of 9,670 Class Member records it received, Simpluris confirmed the final Class List to contain 4,678 Settlement Class. After running the addresses through the USPS's National Change of Address database, Simpluris sent Short Notices to 4,648 Class Members with valid mailing addresses via the United States Postal Service ("USPS"). *Id.* ¶ 7. In addition to the direct notice sent via USPS, Simpluris also sent Short Notice via email to Class Members. After deleting duplicates from the initial list of Class Members' emails it received, Simpluris sent Short Notices via email to 413 Class Members. *Id.* ¶ 14. Simpluris believes that the Short Notices reached 4581 of the 4678 Class Members for a reach rate of approximately 97.93% significantly more than the Federal Judicial Center Guidelines which state that a reach rate of 70% is considered high percentage for a notice campaign. *See id.* ¶ 11.

Simpluris established a dedicated Settlement Website, https://www.asmglobaldatasettlement.com, which contains information on the Litigation, including a summary of the settlement, important dates and deadlines, contact information for Simpluris, answers to frequently asked questions, copies of the Settlement and notice documents, and allowed Class Members to file a Claim Form online. *Id.* ¶ 15–17. Simp.ruis also established a toll-free telephone number that Class Members could call to obtain additional information regarding the Settlement.

### C. Attorneys' Fees and Expenses and Service Award to Plaintiff

Under the terms of the Settlement Agreement, Settlement Class Counsel

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-5-

moved the Court for an award of their reasonable attorneys' fees incurred in the Action in an amount not to exceed one-quarter (1/4) of the Settlement Fund ($87,500). SA ¶ 7.2 Additionally, Settlement Class Counsel may seek an order from the Court awarding up to $10,000 in unreimbursed litigation costs and expenses. *Id.* This amount represents a multiplier of 0.692 on Settlement Class Counsel's lodestar as of the filing of the Motion for Attorneys' Fees and does not account for all subsequent work by Settlement Class Counsel. Mem. of Points and Authorities in Support of Pl.'s Mtn. for Attys' Fees, Expenses, and Services Awards 14, ECF No. 47. Settlement Class Counsel has also incurred a total of $2,056.97 in litigation expenses for which they are seeking reimbursement. *Id.* at 2. Finally, Plaintiff requests the Court grant their request for the Service Award of $3,000 to Plaintiff, in light of their commitment to and risks in pursuing the litigation on behalf of the class. *Id.* at 19–20; SA ¶ 7.3.

**D.    Release**

Upon entry of the Final Approval Order, Plaintiff and the Settlement Class will be deemed to "have, fully, finally, and forever released, relinquished, and discharged all Released Claims." SA ¶ 6.1. Released Claims do not include the claims of individuals who have timely excluded themselves from the Settlement Class. *Id.* ¶ 1.25.

**V.    CLAIMS, REQUESTS FOR EXCLUSION AND OBJECTIONS**

The deadline to object or opt-out was December 2, 2025. Simpluris Decl. ¶ 18. As of the filing of this motion, zero individuals have timely requested exclusion and zero individuals filed an objection. *Id.* ¶ 19. The Claims Deadline was January 2, 2026. *Id.* ¶ 20. As of January 12, 2026, the Claims Administrator has received 311 claims. *Id.* ¶ 15. The 311 claims received results in a claims rate of approximately 6.69%, which is generally higher than the range of claims rates in other data breach class action settlements within this Circuit. *See*, *Carter v. Vivendi Ticketing US LLC*, No. SACV 22-01981-CJC, 2023 WL8153712 *9 (C.D. Cal.) (Claims rate of 1.6%);

*Corona v. Sony Pictures Entertainment, Inc.,* No. 2:14-cv-9600 (C.D. Cal.) ECF Nos. 145-1 at 11 n.8, 164 at 2 (Claims rate of 0.7%); *Cochran, et al. v. Kroger Co.*, No. 5:21-cv-01887, (N.D. Cal.), ECF Nos. 108 at 4-6, 108-1 ¶4 (Claims rate of 2.1%); *Atkinson et al. v. Minted, Inc.,* No. 3:20-cv-03869 (N.D. Cal.), ECF No. 71 at 4 (Claims rate of 3.5%).

## VI.  **LEGAL ARGUMENT**

### A.  **The Court Should Certify the Class for Settlement Purposes**

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litig. § 21.632 (4th ed. 2004). The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). The Court found the Settlement Class met these requirements in its PAO and provisionally certified the Settlement Class for settlement purposes. *See* PAO, at 9. Plaintiff respectfully submits the Court's original assessment was correct and it should now certify the Settlement Class for settlement purposes.

### 1.  **The Rule 23(a) Requirements Are Met for Purposes of Settlement**

The Settlement Class includes approximately 4,678 individuals, SA, at 2; therefore, it readily satisfies the numerosity requirement. *See* Fed. R. Civ. P. 23(a)(1); *Hashemi v. Bosley*, 2022 WL 2155117 *2 (C.D. Cal. 2022) ("Courts generally presume numerosity when there are at least 40 members in the proposed class." (citing *Charlebois v. Angels Baseball, LP*, 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011))). The Class also satisfies the commonality requirement, which requires class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, courts in the Ninth Circuit have found that

these common issues all center around Defendant's alleged misconduct, satisfying the commonality requirement. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 2019 WL 3410382, at *10 (D. Or. July 29, 2019); *Hashemi*, 2022 WL 2155117, at *3. For the same reason, predominance is readily met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Communs. Litig.*, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, among many, whether Defendant engaged in the wrongful conduct alleged; whether Class Members' Private Information was compromised during the Data Security Incident; whether Defendant owed a duty to Plaintiff and Class Members and breached its duty; and whether Defendant unreasonably delayed notifying Plaintiff and Class Members of the material facts of the Data Security Incident.

Typicality and adequacy are also easily met for purposes of settlement. Plaintiff's claims are typical of the proposed Class because they are based on Defendant's alleged failure to protect Plaintiff's and Class Members' Private Information and are therefore "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Forcellati v. Hyland's, Inc.*, No. cv 12-1983-GHK, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014) (finding plaintiffs' claims were reasonably co-extensive with those of absent class members). Plaintiff alleges that his Private Information was compromised, and that Defendant's same alleged poor data security practices caused him same injury that the Class suffered. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

Plaintiff is also an adequate class representative because (1) there are no antagonistic or conflicting interests between Plaintiff and his counsel and the absent Class Members; and (2) Plaintiff and his counsel will vigorously prosecute the action

on behalf of the Class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (citing *Hanlon v. Chrysler Corp,* 150 F.3d, 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 131S.Ct. at 2541; *Longest v. Green Tree Servicing LLC,* 308 F.R.D. 310, 325 (C.D. Cal. 2015). Plaintiff has no conflicts of interest with other class members, are not subject to unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the Class. Joint MFA Decl. ¶ 22. Plaintiff is a member of the Class who has experienced the same injuries and seeks, like other Class Members, compensation. *Id.* As such, Plaintiff's and Settlement Class Counsel's interests align with those of the Class. *Id.* Further, Settlement Class Counsel have decades of combined experience as class action advocates and are well suited to litigate on behalf of the Class. *See id.* ¶ 20–21; *see* Joint Decl. in Supp. of Pl.'s Mtn. for Approval of Att'ys' Fees, Expenses and Service Awards, Exs. C–D ("Firm Resumes"). Thus, Plaintiff will adequately protect the interests of the Class.

### 2. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3). *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any individual questions and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Hanlon,* 150 F.3d at 1022.

Common questions of law and fact predominate over individualized questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Capaci v. Sports Rsch. Corp.*, No. CV 19-3440 FMO, 2022 WL 1133818, at *9 (C.D. Cal. Apr. 14, 2022) (citing *Amchem Prods.*, 521 U.S. at 623). Courts analyze whether a *prima facie* showing of liability can be proved by common evidence or whether this showing

varies from member to member. *Reynoso v. All Power Mfg. Co.*, No. SACV 16-1037 JVS, 2018 WL 5906645, at *3 (C.D. Cal. Apr. 30, 2018) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). If, to make a *prima facie* showing on an issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. *Chua v. City of L.A.*, 2017 WL 10776036, at *9 (C.D. Cal. May 25, 2017). If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. *Id.* (citing *Tyson Foods, Inc.*, 136 S. Ct. at 1045) (internal quotations and citation omitted). Courts in the Ninth Circuit find predominance where there is a sufficient constellation of common issues that binds class members together. *Keegan v. Am. Honda Motor Co*, 284 F.R.D. 504, 545 (C.D. Cal. 2012).

Plaintiff's claims depend, first and foremost, on whether Defendant used reasonable data security measures to protect their Private Information. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc.*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) …'") (citation omitted).

Rule 23(b)(3) also requires that a "class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy" and is intended to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Four factors are pertinent to this inquiry: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely

difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, class treatment of Plaintiff's and the Class's claims is superior to individual actions because a class action will be more efficient and conserve costs, time, and effort. The relatively minor amount of damages traceable to each Class member on an individual basis would not justify the pursuit of separate lawsuits across the country. Additionally, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *Gregorson v. Toshiba America Business Solutions, Inc.*, No. 8:24-cv-01201-FWS-ADS, 2025 WL 2671589, at *3 (C.D Cal. 2025); *Hashemi*, 2022 WL 2155117, at *4. Further, the Class consists of thousands of individuals who, should they be required to bring individual cases, would submit identical factual evidence regarding Defendant's liability and seek redress for the same types of injuries, yet risk having different outcomes, even though their claims arise out of the same conduct and the same Data Security Incident. All these considerations demonstrate the superiority of a class action here.

### B. The Court Should Finally Approve the Settlement

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). For a proposed class action to be approved, the Court must determine, after a hearing, that it is fair, adequate, and reasonable. The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant (not applicable here); (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT Case No. 8:24-cv-00468-WLH-ADS

-11-

collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Each of these factors weighs in favor of approval here.

In applying these factors, the guiding principle for courts remains that settlements of class actions are preferable. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1.    The Strength of Plaintiff's Case

Plaintiff believes he has a strong case for liability. In particular, Plaintiff believes ample evidence will establish that Defendant failed to maintain reasonable data security practices, which led directly to the loss of Plaintiff's and the Class's Private Information. Joint MFA Decl. ¶ 5. Moreover, Plaintiff believes that once he establishes that Defendant's data security measures were inadequate, Defendant is likely to be found liable under at least some of the theories of liability pled in the Complaint. *Id.* ¶ 24. However, Plaintiff's success is not guaranteed. The actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. *Id.*; *see also Dennis v. Kellogg Co.*, No. 09–CV–1786–L, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the challenges and inherent risks Plaintiff faces with respect to the novel claims characteristic of data breach actions, including class certification, summary judgment, and trial, the substantial benefits of the settlement favor final approval of the Settlement. Joint MFA Decl. ¶ 25.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Although Plaintiff believes his case is strong, substantial risk is inherent in all cases. This case involves a proposed class of approximately 4,678 individuals and a complicated and technical factual background in a relatively novel area: data breach litigation. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—data breach class actions are particularly risky and complex. *See, e.g.*, *McDaniel v. Toshiba Glob. Com. Sols., Inc.*, No. 8:24-cv-01772-FWS-ADS, 2025 WL 3190888, at *6 (C.D. Cal. Oct. 3, 2025) ("There are also significant risks associated with class certification, summary judgment, and trial, especially in this data breach case when tying Plaintiff's alleged injuries to this particular data breach may be difficult."); *In re Anthem Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel."); *Smith v. Specialty Networks LLC*, No. 1:24-cv-286, 2025 WL 1944022, at *4 (E. D. Tenn. July 15, 2025) ([C]ontinued litigation would be expensive and delay potential recovery further. This is especially true because data breach cases are very complex . . . ."); *In re Netgain Tech., LLC*, No. 21-cv-1210, 2025 WL 3063288 (D. Minn. Nov. 3, 2025) (citing *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries always unpredictable."); *see also Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, No. 2024 WL 5187565, at *3 (D. Kan. Dec. 20, 2024) ("Cost and risk are an especially salient concern in the data breach context because such cases 'are particularly risky, expensive, and complex.'") (citing *Beasley v. TTEC Servs. Corp.*, No. 22-CV-00097-PAB-STV, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024)); *Mikell v. Tycon Med. Sys., Inc.*, No. 2;25-cv-19, 2025 WL 720001, at *4 (E.D. Va. Mar. 6, 2025) ("Moreover, data breach class action cases are "particularly

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-13-

risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.'") (quoting *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019)). Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law and well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. *McDaniel*, 2025 WL 3190888, at *6. For now, data breach cases are among the riskiest and most uncertain of all class action litigation, making accepting a favorable settlement the more prudent course. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. *See Hashemi*, 2022 WL 2155117, at *4 (explaining that "data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"). As in any data breach case, establishing causation on a class-wide basis also remains uncertain.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the Class. Therefore, this factor favors approval. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14cv1372, 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 3. The Risk of Maintaining Class Action Status Through Trial

The Court's PAO analyzed the requirements of Rule 23, found the requirements satisfied, and conditionally certified the Settlement Class and Subclasses. Nothing has changed that would affect the Court's ruling on class certification. For the reasons stated in the preliminary approval motion and the PAO,

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-14-

the Court's certification of the Settlement Class and Subclasses for settlement purposes only should be affirmed.

### 4. Amount Offered in Settlement

A settlement should stand or fall on the adequacy of its terms. *In re MRV Communs., Inc. Derivative Litig.*, No. CV 08–03800 GA, 2013 WL 2897874, at *4 (C.D. Cal. June 6, 2013) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). The settlement here reflects an excellent result in light of the challenges that come with data breach litigation. Specifically, the settlement provides substantial monetary relief to Class Members who submit valid Claim Forms. *See* SA ¶¶ 2.2, 2.5. The settlement also involves significant business practice enhancements for Defendant's data security system, which will help to protect the Settlement Class's PII going forward. *Id.* ¶ 2.6. The $350,000 settlement fund, excluding the non-cash benefit, represents a recovery of approximately $75.53 per Settlement Class Member, which is on the higher end of recoveries in data breach class actions, as can be seen from the following chart of representative cases:

| Case Title | No. of Class Members | Settlement Fund | Amount Per Class Member |
|---|---|---|---|
| *In re Equifax Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-WT, 2020 WL 256132, at *145, 149–50 (N.D. Ga. Mar. 17, 2020). | >147M | $380.5M | $2.59 |
| *Atkinson v. Minted, Inc*., No. 3:20-cv-03869-VC, 2021 WL 6028374, at *2–4 (N.D. Cal. Dec. 17, 2021). | 4.2M | $5M | $1.19 |
| *In re Anthem*, 327 F.R.D. 299 (C.D. Cal. 2023). | 79.15M | $115M | $1.45 |
| *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *3, 5 (N.D. Ohio Aug. 12, 2019). | 1.5M | $4.325M | $2.88 |
| *Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 WL 3362028, at *7–8 (C.D. Cal. Apr. 2, 2021). | 441K | $625K | $1.42 |

Considering that this is an unsettled area of law fraught with the risk that the Class would not be certified and that Plaintiff would not succeed at trial, the present settlement represents an excellent compromise of Plaintiff's and the Settlement Class Members' claims. *See* Joint MFA Decl. ¶ 25.

In the instant matter, the benefits to the class are far superior to those offered in the above cases, as all Settlement Class Members are receiving substantial benefits, including reimbursement for: (i) Out-of-Pocket Expense Reimbursement of up to $10,000, SA ¶ 2.2; and (ii) a *Pro Rata* Cash Payment based on shares to Settlement Class Members who submit a Valid Claim to receive this benefit, with each Claimant who is not a California resident receiving one share of the Settlement Remainder, and each Claimant that is a California Resident receiving two total shares of the Settlement Remainder, *id.* ¶ 2.5.

Because the settlement here is similar to other settlements that courts, including those in this district, have approved, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiff gathered all of the information that was available regarding Defendant and the Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Date Security Incident to its customers and various states' Attorneys General. Joint MFA Decl. ¶ 26. Additionally, Defendant provided informal discovery regarding the Settlement Class during the course of settlement negotiations. Settlement Class Counsel's experience in similar types of privacy and data protection practices provided substantive knowledge to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending significant time and money to come up

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-16-

to speed on the subject area. *Id.*, ¶ 20. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10434013, at *4 (C.D. Cal. Oct. 12, 2017). Accordingly, Plaintiff made a decision fully informed about the strengths and weaknesses of this case.

### 6.    The Experience and Views of Counsel

Settlement Class Counsel initiated this lawsuit after Defendant announced the Data Security Incident, which impacted approximately 4,678 individuals. Settlement Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint MFA Decl. ¶ 20–21. Having worked on behalf of the Class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and resources to this litigation, Settlement Class Counsel fully endorse the settlement. *Id.* ¶ 27. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Therefore, this factor supports approval.

### 7.    The Reaction of the Class Members to the Proposed Settlement

The deadline to object or opt-out was Dec. 2, 2025. In response to 4,581 Class Members reached, zero objections have been filed, and zero individuals have requested exclusion. Simpluris Decl. ¶ 19. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections [citations omitted]").

### 8.    Lack of Collusion among the Parties

The Parties negotiated a substantial, multifaceted settlement, as described above. The Parties did not negotiate attorneys' fees and the service award until after agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees and the service award were negotiated during numerous and periodic arms'-length negotiations. SA ¶ 7.1. Furthermore, Settlement Class Counsel are well versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint MFA Decl. ¶ 20–21. Thus, the Court can be assured that the negotiations were not collusive.

### 9.    The Settlement Treats Settlement Class Members Equitably

Finally, under Rule 23(e)(2)(D), the court must confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In deciding whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Tech. Inc.*, WL 2467060, at *9 (S.D. Cal. May 12, 2020) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Here, all Settlement Class Members benefit from the same relief, without preferential treatment. While Plaintiff seeks Court approval of a service award, as explained in detail in Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, the award of $3,000 to Plaintiff aligns with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement. Therefore, this factor also weighs in favor of approval.

1  As such, the relevant factors support the conclusion that the negotiated
2  settlement is fundamentally fair, reasonable, and adequate, and should be finally
3  approved.

### C.    The Court Should Affirm Its Appointment of Settlement Class Counsel and Class Representative

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv); 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:48 (6th ed.).

The Court should affirm its appointment of Anderson Berry, Gregory Haroutunian, J. Gerard Stranch, IV, and Grayson Wells as Settlement Class Counsel. Here, Settlement Class Counsel has Stranch has successfully steered this matter through the hard-fought negotiations and throughout this settlement approval process, and they have proven themselves capable of representing the Class and producing significant results. Moreover, Class Counsel has significant experience in consumer class litigation and especially in privacy litigation. Joint MFA Decl. ¶ 20–21. Additionally, the Court should affirm its conditional appointment of Plaintiff as Class Representative. Plaintiff has represented the Class admirably and has at all times assisted Settlement Class Counsel in prosecuting this matter as was necessary—as is evidence by the outcome here. *Id.* ¶ 22.

### D.    The Notice Program Comports with Due Process

Finally, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances,

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
Case No. 8:24-cv-00468-WLH-ADS

-19-

including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forwards and be heard.'" *Sankar v. Cal. Northstate Univ., LLC*, No. 2:24-cv-00473-DAD-JDP, 2025 WL 3539089, at * 14 (E.D. Cal. Dec. 10, 2025) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted)).

Here, the notice program meets this standard. Indeed, the Court approved the proposed notice program in the original settlement agreement subject to the addition of direct notice via email, which was implemented thereafter. *See* PAO; SA § 3. The notice program has now been fully carried out by Simpluris, as described above. Notice was provided to 4,581 members of the Settlement Class. Simpluris Decl. ¶ 11. Moreover, Simpluris established a Settlement Website containing all important information, frequently asked questions, contact information for Simpluris, and all relevant documents, including the Settlement Agreement, preliminary approval order, and notice documents. *Id.* ¶ 15. The Settlement Website also provided Class Members with the ability to file a claim electronically, and, Simpluris set up a toll-free help line. *Id.* ¶ 17. Accordingly, the Notice Program meets the requirements of Due Process and Rule 23.

## VII.    <u>CONCLUSION</u>

For these reasons, Plaintiff respectfully requests this Court (1) approve the Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) finally certify the Settlement Class under Rule 23(b)(3); (3) finally appoint Plaintiff as Class Representatives for the Settlement Class; (4) finally appoint as Settlement Class

Counsel M. Anderson Berry and Gregory Haroutunian of Emery Reddy, PC, J. Gerard Stranch, IV, and Grayson Wells of Stranch, Jennings & Garvey, PLLC; and (5) find the Notice Program as implemented satisfies Rule 23 and due process.

Date: January 16, 2026                    Respectfully Submitted,

*/s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Telephone: (916) 823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

J. Gerard Stranch, IV
Robert Bruce Grayson Kent Wells
**STRANCH, JENNINGS & GARVEY**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,860 words, which complies with the word limit of L.R. 11-6.1.

By: */s/M. Anderson Berry*
M. Anderson Berry

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ M. Anderson Berry*
M. Anderson Berry